IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| PAMELA WYATT JONES, as Mother and Next Friend of Bryan Roberson, an infant, and Scott Roberson, an infant, successors in interest to Barry T. Roberson, deceased, | ) ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 7:13-CV-84 |
| v. | ) ) | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Barry T. Roberson ("Roberson")[1] filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), finding him not disabled and therefore ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Specifically, Roberson alleges that the Administrative Law Judge ("ALJ") erred by failing to properly weigh the opinions of the treating and consulting physicians. I agree that the ALJ improperly discredited the opinions of Roberson's treating and consultative physicians. As such, I **RECOMMEND GRANTING IN PART** Roberson's Motion for Summary Judgment (Dkt. No. 13), **DENYING** the Commissioner's Motion for Summary Judgment. (Dkt. No. 18), and reversing and remanding this case pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this report and recommendation.

---

[1] Barry T. Roberson died on August 16, 2012, for reasons unrelated to his Social Security disability claim. Pl.'s Br. Summ. J. p. 1. On November 12, 2013, this Court entered an Order substituting Pamela Wyatt Jones, the mother of Barry T. Roberson's surviving children, as Plaintiff and next friend on behalf of Bryan Roberson and Scott Roberson, the surviving infant children. Dkt. No. 17.

1

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Roberson failed to demonstrate that he was disabled under the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Roberson filed for DIB on April 1, 2009, claiming that his disability began on February 26, 2009.[3] R. 149. The state agency denied his application at the initial and reconsideration levels of administrative review. R. 60–69, 70–79. On May 6, 2011, ALJ Geraldine H. Page held a hearing to consider Roberson's disability claim. R. 30–59. Roberson was represented by an attorney at the hearing, which included testimony from Roberson and vocational expert AnnMarie E. Cash. R. 30–59.

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[3] Roberson's date last insured is September 30, 2009. R. 20. Therefore, he must show that his disability began before that date and existed for twelve continuous months to receive DIB. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).

2

On June 21, 2011, the ALJ entered her decision analyzing Roberson's claim under the familiar five-step process,[4] and denying Roberson's claim for benefits. R. 15–29. The ALJ found that Roberson suffered from the severe impairments of degenerative joint disease/osteoarthritis of the left knee, status–post surgery left knee arthroscopy, history of cellulitis, and obesity. R. 20. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 22. The ALJ further found that Roberson retained the residual functional capacity ("RFC") to perform a range of light work, with the qualification that he could lift and carry up to ten pounds frequently and twenty pounds occasionally; that he could sit, stand and/or walk for up to six hours in an eight hour work day; that he could never crawl; that he was limited in pushing/pulling with his left lower extremity to the lift/carry amount; that he could occasionally balance, stoop, kneel, crouch and climb ramps and stairs; and that he should avoid working around hazards, including unprotected heights, vibrating surfaces, hazardous machinery, or climb ladders, ropes, or scaffolds. R. 22. The ALJ determined that Roberson could return to his past relevant work as a machine operator (R. 28), and he could also work at jobs that exist in significant numbers in the national economy, such as dishwasher, office machine operator, and folding machine operator. R. 29. Thus, the ALJ concluded that he was not disabled. R. 29. On December 31, 2012, the Appeals Council denied Roberson's request for review (R. 1–4), and this appeal followed.

---

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## ANALYSIS

Roberson argues that the ALJ erred by giving little weight to the functional restrictions suggested by his treating physician, William M. Skewes, M.D., and consultative physician Robert Stephenson, M.D.,[5] and by failing to provide sufficient rationale for rejecting their opinions. Specifically, on May 6, 2011, Dr. Skewes found that Roberson could walk/stand no more than two hours a day with frequent breaks, that his pain would interfere with his concentration, and that his impairments would cause significant absenteeism from work. Dr. Stephenson gave the opinion on May 11, 2011 that Roberson could walk/stand for two hours a day, would need frequent position changes and could perform only limited positional activities such as crouching, kneeling, squatting, etc. R. 346–47, 436–41. Roberson also argues that the ALJ erred by finding his complaints of low back pain and right knee pain to be non-severe impairments. Having reviewed the record, I find that the ALJ improperly discounted the opinions of Drs. Skewes and Stephenson, and did not sufficiently explain her rationale with regard to the weight she gave the medical opinion evidence.

The focus of this appeal is on the functional limitations caused by Roberson's left knee impairments. Roberson was born in February 1968 and has a high school diploma. R. 35–36. He injured his left knee in 1998, and subsequently underwent arthroscopic surgeries, in 1998 and 2002. R. 284, 330, 333–34. Over the next seven years, Roberson continued to have bilateral knee pain, left greater than right. R. 386, 353–54, 406–07. His doctors prescribed pain medication, and in June 2006, Roberson reported that medication controlled his symptoms so that he could maintain a functional state. R. 351. Roberson was working as a machine operator at that time, which was medium exertion, semi-skilled work. R. 52, 163.

---

[5] Dr. Stephenson saw Roberson for an office visit one time in 2001. However, because Dr. Stephenson's opinion at issue in this case was based upon a contemporaneous consultative examination of Roberson in 2011, I will consider him to be a consultative physician for purposes of this opinion. 20 C.F.R. § 404.1502.

4

On April 27, 2008, Roberson presented to the emergency room complaining of swelling in his legs. R. 236–42. The emergency room physician diagnosed Roberson with cellulitis, and instructed him to elevate his legs and consider wearing support hose to reduce the swelling. R. 236. A few weeks later, Roberson saw his longtime treating family physician, Dr. Skewes, complaining of low back and left knee pain. R. 273–74. Dr. Skewes ordered an MRI of Roberson's left knee which revealed generalized degenerative arthritic changes involving the medial and lateral compartments and patellofemoral joint. R 228. An MRI of Roberson's lumbar spine showed a mild broad based disc protrusion at L4-L5 and L5-S1 that was probably not clinically significant. R. 229.

Dr. Skewes referred Roberson to Brent Johnson, M.D., an orthopedic specialist, to evaluate his complaints of increasing knee pain. R. 230–31. On September 11, 2008, Roberson visited Dr. Johnson, and reported that his job required working on his feet on concrete ten to twelve hours a day. R. 230. He wore a knee brace to prevent buckling, and reported swelling and increased pain in his left knee by the end of each day. R. 230. On examination, Dr. Johnson noted that Roberson had good range of motion of both hips, normal looking valgus alignment of both knees with standing, and pes planus bilaterally. R. 230. He had good quad activation, but patellofemoral crepitus bilaterally, and pain with patella compression on the left. R. 230–31. Roberson reported some lateral facet tenderness on the left, and lateral joint line tenderness. R. 231. He had full knee extension bilaterally, and flexion of 110 degrees on the left and 125 degrees on the right. R. 231.

Dr. Johnson reviewed the MRI of Roberson's left knee, and found "relatively significant degenerative changes involving all three joints," with some lateral patellar subluxation and evidence of "osteochondral almost fracture in the posterior sort of central aspect of the lateral

5

femoral condyle." R. 231.  Dr. Johnson diagnosed Roberson with left knee osteoarthritis.  He noted that Roberson had diffuse degenerative changes in his knee, a "significant problem for a 40-year-old." R. 231. Dr. Johnson found no obvious surgical lesion, and recommended weight reduction, bracing, and occupational change or modification so that Roberson was not chronically standing on his feet on concrete. R. 231.

Five months later in February 2009, Roberson was laid off from his job and began collecting unemployment. R. 36–37.  Roberson testified that prior to losing his job he had difficulty performing his job duties, and missed four to five days of work per month. R. 47. Roberson returned to Dr. Skewes on June 11, 2009, September 10, 2009, January 5, 2010, and July 5, 2010 with left knee pain complaints. R. 265–66, 277.  Dr. Skewes's office notes for those visits are largely illegible.

On June 16, 2009, state agency physician Joseph Duckwall, M.D., reviewed Roberson's records and concluded that he was capable of lifting 25 pounds occasionally and 50 pounds frequently; sitting, standing and/or walking six hours in an eight hour workday; and occasionally performing postural changes such as climbing ramps/stairs, balancing, stooping, kneeling, crouching and crawling. R. 64–65.  Dr. Duckwall found that Roberson should never climb ladders, ropes or scaffolds, and should avoid concentrated exposure to hazards. R. 64–65.  On November 16, 2009, state agency physician Michael Hartman, M.D., reviewed Dr. Duckwall's findings and agreed with his suggested limitations. R. 74–76.

On August 29, 2010, Roberson visited the emergency room for edema and cellulitis. R. 426.  He was advised to elevate his legs above the chest as much as possible. R. 434.

On May 6, 2011, Dr. Skewes completed a functional capacity questionnaire provided by Roberson's attorney. R. 346–47.  Dr. Skewes reported that Roberson was diagnosed with a left

6

femoral condyle/osteochondral defect and degenerative arthritis of the left knee (bone on bone). R. 236. He noted that his clinical findings included left knee pain leading to back/musculoskeletal pain, increased sedimentation rate, and an increased C-reactive protein causing chronic inflammation. R. 33, 236.

With regard to Roberson's functional limitations, Dr. Skewes found that in an eight hour workday, Roberson could stand/walk less than two hours; sit at least six hours, with frequent breaks; and lift and carry twenty pounds occasionally. R. 346. Dr. Skewes found that Roberson's pain would interfere with his attention and concentration frequently, and that he was likely to be absent from work about four times a month. R. 347. Dr. Skewes further stated that his opinion regarding Roberson's limitations related back to February 26, 2009, the alleged date of disability. R. 347.

On May 11, 2011, orthopedic surgeon Dr. Stephenson conducted a consultative evaluation of Roberson at the request of Roberson's attorney. R. 436–41. Dr. Stephenson examined Roberson and produced a detailed written report, discussing Roberson's history of left knee pain and treatment, low back pain and treatment, edema, depression and anxiety. Dr. Stephenson conducted a physical exam of Roberson which showed a mildly obese male in no acute distress, with a decreased mood and flattened affect. Roberson had diffuse tenderness over his low back, without muscle spasm. His low back range of motion showed forward flexion of 80 degrees with extension limited to 10 degrees; lateral bending limited to 15 degrees on each side, and rotation limited to 10 degrees on each side related to pain and stiffness in the low back. The Faber test was negative bilaterally and the straight leg raising test was negative to 90 degrees in the sitting position and 80 degrees in the supine position. He had mild hamstring tightness bilaterally and good range of motion in his hips.

7

With regard to his knees, Dr. Stephenson found that Roberson had moderately severe crepitus in his left knee, with moderate crepitus on range of motion in the right knee. The ligaments were stable in both knees. He displayed a full range of motion of both knees with normal patellar tracking, and diffuse lateral and patellofemoral pain on palpation over the left knee. Roberson had no edema of the lower extremities, and his motor and sensory exams were intact. Roberson had normal heel and toe walking which caused increased knee pain, and he was limited in squatting to 100 degrees at the hips and 80 degrees at the knee. Dr. Stephenson also noted that Roberson had a slightly antalgic gait with mild stiffness and that he favored his left lower extremity during ambulation. R. 438–39.

Dr. Stephenson diagnosed Roberson with posttraumatic degenerative arthritis of the left knee involving all three compartments of the left knee, as documented by MRI scanning. He found that Roberson also likely had degenerative arthritis in the right knee and chronic low back strain with likely underlying early degenerative changes of the lumbar spine. R. 439. Roberson also had moderate abdominal obesity with likely muscular deconditioning related to his relatively sedentary lifestyle. R. 440.

Dr. Stephenson noted that Roberson gave his best effort during evaluation. R. 440. With regard to functional limitations, Dr. Stephenson found that Roberson was limited to standing and walking no more than two hours per day because of left knee symptoms, and was limited to sitting four to six hours per day, due to low back symptoms. He would require frequent position changes to help with his low back pain and stiffness, and could only occasionally perform positional activities such as crouching, kneeling, squatting, and climbing. R. 440. Roberson should avoid vibrations, cold or damp environments, hazardous machinery, or unprotected

8

heights. Roberson could lift less than twenty pounds occasionally and should avoid all floor to waste lifting. R. 441.

Further, Dr. Stephenson reviewed Dr. Skewes's functional capacity report and agreed with his assessments. R. 441. Dr. Stephenson felt that Roberson would likely be absent from work at least four times a month because of his medical problems, and that his problems "clearly" relate back to February 26, 2009, based on radiographic findings. R. 440. Dr. Stephenson recommended that Roberson continue his current medications and use of a left knee brace, attempt to lose weight and perform strengthening exercises. R. 440.

The ALJ concluded that Roberson was capable of performing a range of light work, which involves standing and/or walking for six hours in an eight hour day, and sitting for six hours in an eight hour day. R. 22. The ALJ gave the opinions of the state agency physicians only "some" weight, finding that Roberson was more limited than their suggested functional restrictions. R. 27. The ALJ considered Dr. Skewes's opinion and gave it little weight, stating,

> [a]lthough Dr. Skewes is a treating physician, his opinion is without support from treatment notes. As discussed above, treatment notes in the record are largely illegible, and there are only two visits between the alleged onset date and the date last insured. From what can be read of these records, the doctor generally failed to document objective findings that might substantiate his opinion.

R. 27.

The ALJ also gave little weight to Dr. Stephenson's opinion, noting that his examination of Roberson occurred more than a year after the date last insured, that Dr. Stephenson found "some abnormalities" but also indicated that Roberson was in no acute distress, straight leg raising was negative, gait was only slightly antalgic, motor and sensory examination was intact, and he had full range of motion in both knees. R. 27. The ALJ emphasized that Roberson underwent his examination with Dr. Stephenson through an attorney referral and in connection

9

with an effort to "generate evidence" for his appeal. The ALJ stated, "[t]he doctor presumably was paid for the report. Although such evidence is certainly legitimate and deserves due consideration, the context in which it was produced cannot be entirely ignored." R. 27. Roberson argues that the ALJ's decision to give little weight to the opinions of Drs. Skewes and Stephenson was erroneous. I agree.

The ALJ is required to analyze every medical opinion received and determine the weight to give to such an opinion in making a disability determination. 20 C.F.R.§ § 404.1527(c), 416.927(c). A treating physician's opinion is to be given controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) ("[A] treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record."); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations…"); Social Security Ruling ("SSR") 96-2p.

The ALJ is to consider a number of factors, including whether the physician has examined the applicant, the existence of an ongoing physician-patient relationship, the diagnostic and clinical support for the opinion, the opinion's consistency with the record, and whether the physician is a specialist. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). A treating physician's opinion cannot be rejected absent "persuasive contrary evidence," Mastro, 270 F.3d at 178, and

10

the ALJ must provide his reasons for giving a treating physician's opinion certain weight or explain why he discounted a physician's opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."); SSR 96-2p ("[T]he notice of determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."); see also Kratzer v. Astrue, No. 5:07cv00047, 2008 WL 936753, at *7 (W.D. Va. Apr. 8, 2008) (noting the ALJ is expressly obligated to explain the consideration given to his opinions).

The ALJ's evaluation of the medical opinions in this case does not satisfy the legal standards for consideration of these opinions. Under the regulations, the ALJ must explain her rationale for giving little or no weight to the opinion of a treating or consulting physician, and her rationale must be supported by the record. In this case, the ALJ's rationale for the weight given to the opinions of Drs. Skewes and Stephenson is insufficient and not supported by the record.

**Dr. Skewes**

Dr. Skewes has been Roberson's primary care physician since 1999. He had an ongoing physician-patient relationship with Roberson, and consistently treated Roberson for his left knee pain before, during and after his alleged period of disability.[6] In fact, Dr. Skewes's records reflect that he monitored Roberson's condition with regular laboratory studies and office visits

---

[6] The ALJ noted that Roberson had "only two visits" with Dr. Skewes between the alleged onset date and the date last insured. R. 27. The relevant period of disability is only seven months long; thus, Roberson's two visits with his treating physician is not remarkably few. The record reflects that Dr. Skews treated Roberson for the relevant medical conditions for years both before and after the relevant time period.

11

over a period of twelve years. Shortly before his alleged date of disability, Dr. Skewes sent Roberson for diagnostic tests of his left knee, and referred to him to orthopedic specialist Dr. Johnson. The record shows that Dr. Johnson provided a copy of his examination and findings to Dr. Skewes. In May 2011, Dr. Skewes completed a form stating his medical opinion of Roberson's functional limitations. On that form, Dr. Skewes set forth each of Roberson's specific functional limitations, and offered diagnostic and clinical support for his opinions regarding Roberson's ability to work. R. 346–47. Despite Dr. Skewes's multiple examinations and significant longitudinal history of treating Roberson, the ALJ dispensed with Dr. Skewes's opinion in three sentences, giving it little weight because his treatment notes were illegible, and thus the ALJ determined that Dr. Skewes did not document objective findings to substantiate his opinion. R. 27.

The ALJ was required to consider a number of factors when evaluating the opinion of a treating physician such as Dr. Skewes, including whether Dr. Skewes examined Roberson, the existence of an ongoing physician-patient relationship, the diagnostic and clinical support for the opinion, the opinion's consistency with the record, and whether Dr. Skewes is a specialist. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Here, the ALJ gave no indication that she weighed such factors, nor did she provide persuasive reasons for discounting Dr. Skewes's opinion, aside from his illegible treatment notes.

Illegibility of a treating physician's notes, without other persuasive contrary evidence, is an insufficient basis upon which to reject his opinion. Holmes v. Comm'r, 7:07cv543, 2008 WL 4809951, at *4–*6 (W.D. Va. Oct. 31, 2008) report and recommendation adopted, 7:07cv00543, 2008 WL 5332020 (W.D. Va. Dec. 19, 2008) ("it is manifestly unjust to make a disability decision on the basis of the inability to read the treating physician's notes"); Bryant v. Astrue,

12

No. 06-1305-WEB, 2007 WL 2377079 at *6 (D. Kan. Aug. 14, 2007). See also Wolowski v. Astrue, 7:07cv430, 2008 WL 4966897, at *7 (W. D. Va. Nov. 17, 2008) (error for ALJ to reject treating physician's opinion with conclusory statement that it is not supported by the objective evidence of record where other evidence of record, such as diagnostic tests support the physician's findings). C.f. Plunkett v. Astrue, Civ. Action No. 2:10cv00041, 2011 WL 1516067, at *5 (W.D. Va. Apr. 20, 2011) (ALJ was required to consider opinion of chiropractor even though he was a non-acceptable medical source and his treatment notes were largely illegible).

As the court stated in Holmes v. Commissioner, "[w]hile the ALJ's assessment [of a treating physician's opinion] may well be true, it is difficult to see how the ALJ could reach such a conclusion when neither he nor [the medical expert] were able to read the treating physician's notes." 2008 WL 4809951, at *4. The Holmes court concluded that the ALJ was obligated to recontact the treating physician to clarify his illegible treatment notes, and remanded the case for that purpose. Id. Indeed, the social security regulations provide that an ALJ must recontact a treating source when the source's treatment notes are incomplete. See 20 C.F.R. §§ 404.1512(e), 416.912(e)(1); SSR 85-16 ("When medical source notes appear to be incomplete, recontact with the source should be made to attempt to obtain more detailed information. Every reasonable effort should be made to obtain all medical evidence from the treating source necessary to make a determination of impairment severity and RFC before obtaining evidence from any other source on a consultative basis.") See Elder v. Astrue, CIV.A.3:09-02356-JRM, 2010 WL 3980105 (D.S.C. Oct. 8, 2010) quoting White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2001) (ALJ has duty to recontact treating physician where evidence is inadequate to determine whether the applicant is actually disabled); Odom v. Astrue, 2:10-02757-DCN-BHH, 2012 WL 1029670 (D.S.C. Mar. 27, 2012) ("While courts generally do not impose the duty to recontact with much

rigor…where the internal inconsistency was dispositive of the ALJ's entire dismissal of [a treating physician's] opinion, the ALJ had a 'duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record.'") (quoting Miller v. Callahan, 964 F. Supp. 939, 954 (D. Md. 1997)).

As the court in Holmes aptly noted, "if the ALJ did not know what an important part of the record, i.e., the treating physician's notes, said, how could the ALJ find that [the treating physician's] disability opinion was 'inconsistent with the record as a whole?'" 2008 WL 4809951, at *4. This case presents the same question. If the ALJ could not decipher Dr. Skewes's treatment notes, how can they be a legitimate basis upon which to discount his opinion?

The ALJ cites neither a contradictory treating physician's opinion nor persuasive contradictory medical evidence to support discounting Drs. Skewes's opinion. A review of the record establishes that Dr. Skewes's findings are consistent with other medical evidence, such as Roberson's MRI results, which document degenerative arthritic changes in all three of the joints in his left knee, and the evaluation of orthopedic specialist Dr. Johnson. Dr. Skewes's opinion was reviewed by and concurred with by Dr. Stephenson, the only other examining physician to give an opinion in this case. The only conflicting medical evidence in the record are the two state agency physicians' opinions, which the ALJ determined were entitled to only "some" weight, because they did not accurately reflect Roberson's functional capacity.[7]

While the ALJ's ultimate assessment of Dr. Skewes's opinion may be correct, without evidence as to the content of Dr. Skewes's illegible treatment notes, I cannot say that the ALJ's decision is supported by substantial evidence. See Paxton v. Astrue, No. 1:11cv00070, 2012 WL

---

[7] Notably, the state agency physicians did not have the benefit of reviewing the opinions of Dr. Skewes or Stephenson prior to rendering their assessments. See Richardson v. Astrue, Civ. Action No. 7:10-cv-23, 2011 WL 4351608, at *3 (W.D. Va. Sept. 15, 2011) ("Record reviews are of little value when the record is incomplete.")

14

3011017, at *1 (W.D. Va. July 23, 2012) ("Before a court may find that an ALJ's decision is supported by substantial evidence, the ALJ's decision must analyze all the relevant evidence and sufficiently explain his findings and rationale. The court faces a difficult task in applying the substantial evidence test when the ALJ's opinion does not show that the ALJ properly considered all of the relevant evidence."); see also Holmes, 2008 WL 4809951, at * 6.

The ALJ could easily have reached out to Dr. Skewes to have the treatment notes deciphered. The ALJ must "explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only of the evidence submitted by the claimant when that evidence is inadequate." Jones v. Astrue, No. SKG-09-1683, 2011 WL 5833638 at *14 (D. Md. Nov. 18, 2011) (quoting Walker v. Harris, 642 F.2d 712, 714 (4th Cir. 1981)); Marsh v. Harris, 632 F.2d 296, 300 (4th Cir. 1980). This is especially true where, as here, the notes are of the treating physician, and there are no other parts of the record to fill in any gaps left by the inability to read these notes and understand the subjective complaints, physical examination and objective findings of the treating physician. See Parker v. Astrue, 792 F. Supp. 2d 886, 895 (E.D.N.C. 2011) (noting it is clear that an ALJ's duty to re-contact a treating source "arises only when the evidence as a whole is inadequate to determine the issue of disability").

**Dr. Stephenson**

The ALJ's rationale for discrediting the opinion of Dr. Stephenson, the only consultative physician in the record, is also insufficient. The ALJ gave little weight to Dr. Stephenson's opinion because 1) it was rendered more than a year after Roberson's date last insured; 2) it indicated only moderately abnormal findings; and 3) it was obtained through an attorney referral.

15

The Fourth Circuit has recognized that a physician can offer a retrospective opinion regarding the past extent of an impairment. Wilkins v. Secretary, 953 F.2d 93, 96 (4th Cir. 1991). Indeed, the Fourth Circuit found that evidence created after a claimant's date last insured, which permits an inference of linkage between the claimant's post-date last insured state of health and his pre-date last insured condition, could be the "most cogent proof" of a claimant's pre-date last insured disability. Bird v. Comm'r, 699 F.3d 337, 341 (4th Cir. 2012). However, such opinions may be discounted when they are dated long after the date last insured and are inconsistent with other opinions from the relevant period. Brown v. Astrue, CIV. A. 8:11-03151, 2013 WL 625599, at *15 (D.S.C. Jan. 31, 2013) report and recommendation adopted, 8:11-CV-03151-RBH, 2013 WL 625581 (D.S.C. Feb. 20, 2013) (citing Johnson v. Barnhart, 434 F.3d 650, 656 (4th Cir. 2005). In this case, Dr. Stephenson's opinion was rendered a mere twenty months after Roberson's date last insured, and is consistent with the only other treating physician's opinion in the record. Thus, it should not be discounted because it was retrospective.

Additionally, the ALJ selectively cited five relatively "normal" findings from Dr. Stephenson's physical examination of Roberson in a superficial attempt to discredit Dr. Stephenson's entire opinion. However, the ALJ may not select and discuss only that evidence that favors his ultimate conclusion. Hines v. Barnhart, 453 F.3d 550, 565 (4th Cir. 2006) (quoting Diaz v. Chater, 55 F. 3d 300, 307 (7th Cir. 1995). Dr. Stephenson prepared a thorough and detailed report of Roberson's medical history, pain complaints, treatment, physical examination and his resulting medical conclusions. Dr. Stephenson performed a physical examination of Roberson, and articulated specific findings as to his functional capacity, relating each finding to an underlying medical condition. Dr. Stephenson's opinion, read as a whole,

16

reveals no inconsistency between his suggested functional limitations and the five normal physical findings identified by the ALJ.

Finally, any insinuation by the ALJ that Dr. Stephenson's opinion is less reliable because it was solicited for use in connection with a disability claim is misplaced. An individual seeking to qualify for a period of disability insurance benefits must "prove" that he is disabled and "must provide evidence" showing how his impairments "affect his functioning." 20 C.F.R. § 404.1512. It was, therefore, proper for Roberson to seek and submit the medical opinion of Dr. Stephenson in an effort to meet his burden of proof and persuasion. The ALJ's rejection of Dr. Stephenson's opinion on the ground that it was solicited by Roberson's attorney is not supported by case law, and is not a cognizable basis upon which to predicate the rejection of a consultative physician's opinion. See Kratzer v. Astrue, 5:07CV00047, 2008 WL 936753, at *8 (W.D. Va. Apr. 8, 2008) ("For the ALJ, in his capacity as the fact finder, to reject these opinions on the ground that they were submitted 'to influence the disability fact-finding process' defies both law and logic."). The ALJ did not cite any probative evidence in the record to support an inference of pro-patient bias on the part of Dr. Stephenson. Id. In fact, Dr. Stephenson is well known to the Court as a physician frequently used by the Commissioner to conduct record reviews and consultative exams. Such unsubstantiated speculation about the credibility of a consulting physician without a factual basis is not only misplaced, but also inappropriate.[8]

As with Dr. Skewes's opinion, the ALJ did not cite any competing examining physician's opinion or persuasive contradictory medical evidence to support discounting Dr. Stephenson's

---

[8] The inappropriate and unsupported speculation that Dr. Stephenson has less credibility simply because he has supposedly been retained by counsel for Roberson to conduct a physical consultative examination is highlighted by the fact that in her decision, the ALJ embraces state agency consultants or non-examining medical sources because they have "a high level of understanding of the Social Security disability program and enjoy a review of all the available evidence in the record when forming their opinions." R. 27. Dr. Stephenson presumably enjoys this deference when he reviews records at the Commissioner's request as a state agency physician.

17

opinion. Dr. Stephenson's findings were supported by the only treating physician's opinion in the record, as well as diagnostic tests and Roberson's medical records in general. Thus, without a more substantial and meaningful explanation for rejecting Dr. Stephenson's opinion, I cannot say that the ALJ's decision is supported by substantial evidence.

## CONCLUSION

I am cognizant of the fact that the ALJ is given wide discretion, and is vested with the authority to weigh conflicting evidence. However, the ALJ's decision must be made in light of the entire record and consistent with the standards set forth in the social security regulations and case law. As noted above, Drs. Skewes and Stephenson, the only examining physicians in the record, both concluded that Roberson suffers from functional limitations that would prevent substantial gainful activity at any level. Their opinions are supported by diagnostic evidence, and are consistent with other evidence in the record. The only contradictory opinion evidence comes from the two state agency physicians, who did not have the benefit of reviewing the opinions of Drs. Skewes and Stephenson, and were discounted by the ALJ as an inflated depiction of Roberson's functional capacity.

Here, the ALJ developed an RFC where the medical records from a treating physician were illegible and the consultative medical examination documented that Roberson had a significant ongoing problem with left knee pain and swelling which was exacerbated with extended standing and walking on hard surfaces. The ALJ elected to give only "some weight" to the opinions of the state agency physicians because Roberson was more limited than they determined. The ALJ then, in turn, gave only little weight to the restrictive limitations found by Dr. Stephenson. In sum, the ALJ essentially rejected all of the medical opinions to develop Roberson's RFC. The ALJ based the RFC on Roberson's "own subjective allegations, his

18

infrequent and conservative treatment received since the alleged onset date, the objective findings, and the record as a whole." I find that substantial evidence in the record simply does not support this conclusion.

Accordingly, the ALJ's rejection of Drs. Skewes's and Stephenson's opinions is not supported by substantial evidence and is contrary to the Commissioner's regulations and case law. The ALJ must provide a more detailed explanation, supported by substantial evidence in the record, as to why the disabling limitations found by Drs. Skewes and Stephenson are not entitled to weight. See Holmes v. Comm'r, 7:07cv543, 2008 WL 4809951, at *4–*5 (W.D. Va. Oct. 31, 2008). Therefore, I recommend that this case be remanded for proper evaluation of the opinions of Drs. Skewes and Stephenson.[9] See Ledbetter v. Astrue, 8:10-CV-00195-JDA, 2011 WL 1335840, at *3 (D.S.C. Apr. 7, 2011) ("Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision.") (citing Smith v. Heckler, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); Gordon v. Schweiker, 725 F.2d 231, 235 (4th Cir.1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **DENYING** the Commissioner's motion for summary judgment, **GRANTING IN PART** plaintiff's motion for summary judgment, and **REMANDING** this case under sentence four of 42 U.S.C. § 405(g) to the Commissioner for further proceedings consistent with the above opinion.

---

[9] Roberson also alleges that the ALJ improperly determined that his low back pain and right knee pain were not "severe" impairments. Pl's Br. Summ. J. p. 6 n. 3. Upon remand, the ALJ must consider the medical evidence of record, including the opinions of Dr. Skewes and Dr. Stephenson, when determining Roberson's severe impairments as well as his RFC. 20 C.F.R. § 404.1520.

19

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Enter: August 11, 2014

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge